## In re Anonymous No. 16 D.B. 80

Disciplinary Board Docket no. 16 D.B. 80.

To The Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

HARRINGTON, *Member,* February 18, 1981— Pursuant to Pa.R.D.E. 218(B)(5) (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for reinstatement.

## I. HISTORY OF THE PROCEEDINGS

This matter comes before your honorable court with the recommendation of the board that petitioner be reinstated to the practice of law. Petitioner was admitted to the Supreme Court of Pennsylvania in April, 1950. He continued as a member of the Pennsylvania Bar in good standing for the next 23 years.

In the spring of 1973, he decided to withdraw from the active practice of law. To that end, petitioner met with an acquaintance of his, [ ], whom petitioner describes as comptroller for the Disciplinary Board. This acquaintance advised petitioner in certain matters relating to the voluntary withdrawal from the active practice of law and petitioner accepted his advice and followed his recommendations. He wound up the legal matters then pending, notified his clients of his intention to become inactive and recommended several other competent counsel from among whom the clients could choose as his successor if they wished. He went to Bar Association headquarters on [ ] Street in [ ] and turned in his "Identification Card" to the person at the reception desk in the Bar Association headquarters. By these actions, petitioner was confident that he had complied with all of the requirements then affecting the action he was taking. The

record does not disclose nor does Disciplinary Counsel contend that petitioner at any time withdrew from the practice of law for any reason related to any disciplinary proceedings or any difficulty that he may have been having in connection with or that affected the practice of law. At no time in his professional career has petitioner ever been charged with any violation of any disciplinary rule.

In the approximately seven years between his voluntary withdrawal from the practice of law and his petition for reinstatement, which was filed in March of 1980, he undertook to do some "serious writing." His effort in that field included seven short stories, some poetry, 60,000 words written toward the completion of a novel and in addition thereto, he worked on a play. He did painting, carpentry work and once worked for a couple of months in a kitchen serving hot meals to 600 people (T.81). In addition, he did some pro bono work for the Senior Corps of Retired Executives. At the time of petitioner's petition for reinstatement and for some short time previous to that, he was employed by [ ], Esq., of the [ ] County Bar as a paralegal doing legal research and preparing briefs.

On March 26, 1980, petitioner filed a petition for reinstatement from inactive status pursuant to Pa.R.D.E. 218(c)(3)(ii). A hearing on the petition was held on June 3, 1980, before a hearing committee.

At the hearing, petitioner was represented by [ ]. [ ] appeared on behalf of the office of Disciplinary Counsel. At the hearing, petitioner called to testify attorneys [A], [B] and [C], all of whom testified at length as to the professional competence and good character of petitioner. Petitioner offered into evidence several letters from attorneys praising petitioner's skill and high moral character and urging his reinstatement.

Disciplinary Counsel called no witnesses but did conduct substantial cross-examination.

On September 22, 1980, the hearing committee filed a report which contained a recommendation that petitioner be reinstated provided certain conditions were met by petitioner. The report reads in part:

"The Hearing Committee has no doubt of the intellectual ability of the applicant and his capacity to provide competent legal service to those who may seek his services in the event he is reinstated. It is, however, seriously concerned so far as the attitude expressed and displayed by the applicant with reference to what might generally be called 'professional standards.'

The Hearing Committee simply does not credit his explanation of his arrests and brushes with the law nor is it satisfied with his treatment of his financial obligations to say nothing of his failure to report them in his Petition for Reinstatement.

However, the Office of Disciplinary Counsel has not expressed any objection to the Reinstatement. Under the circumstances, the Hearing Committee, albeit reluctantly, recommends the reinstatement of the applicant on condition that he make arrangements promptly to discharge such financial obligations as are admittedly owing and to promptly litigate those which he alleges are not due and owing.

It is also desired that he file an Amended Petition, which will completely and truthfully set forth all of the facts concerning his criminal law violations and his failure to discharge his financial obligations, to the end that these will be part of the record. This Hearing Committee has neither the desire nor the willingness to brush aside these incidents, which occurred during the mature and responsible phase of the life of a member of the Bar."

The concern of the hearing committee relates in part to certain incidents which occurred a number of years before the hearing and some of which Disciplinary Counsel contends were not properly reported on the application for reinstatement.

Petitioner was arrested on two occasions. In 1972, a warrant was sworn out on the allegation that petitioner had defrauded an innkeeper. The matter was adjusted between parties and the charges dropped. Petitioner testified that he had ". . . secured the release of a friend of many years from a [ ] Hospital." He put the friend up in a Holiday Inn and put down a $100 deposit for the bill. The deposit proved to be inadequate and the criminal action followed.

Petitioner explained his failure to report the incident on the reinstatement application by saying he simply had forgotten it.

Petitioner did report on the questionnaire that he had pled guilty to the misdemeanor of carrying a gun without a proper permit. Petitioner testified that he had purchased the gun for self-defense after having been "mugged twice" on the [ ] streets. He was showing the weapon to a group of friends at a restaurant. A busboy became concerned when he saw the weapon and called the police. Petitioner's permit to carry the gun had been applied for but was not signed by the Chief of Police. As a result, he was in fact in violation of the law. He paid a fine of $200.

Petitioner has several judgments of record against him. Despite this fact, petitioner answered "no" to question no. 15 on the questionnaire for reinstatement:

"No. 15. As of the date of the within answers, do you have any fixed financial obligations or other notable requirements for payment, such as for alimony or support?"

As to the indebtedness, itself, petitioner explains it in part by identifying most as the record of a bond on a mortgage, which should have been removed from the judgment index. He challenges at least his moral obligation to repay some of the debts and acknowledges his obligation to pay some others.

As to why he answered "no" to the question no. 15, his explanation appears on page 120 of the Testimony in the following exchange:

"Q. So, you do acknowledge that you do owe some debt?

A. It's legal, yes.

Q. Why did you not include this in your Petition?

A. It just didn't occur to me. It didn't occur to me.

It's not a pressing obligation as far as I am concerned." Later in the record, petitioner discusses the matter futher but in essence has no further explanation for his failure to identify the various judgments charged against him.

Disciplinary Counsel opposes the petition for reinstatement and argues that:

"Petitioner [   ] did not meet his burden of proof of demonstrating by a clear and convincing preponderance of the evidence that he '. . . has the moral qualifications . . . required for admission to practice law in this Commonwealth' and that his '. . . resumption of the practice of law within the Commonwealth . . . will be neither detrimental to the integrity and standing of the Bar or the administration of justice nor subversive to the public interest'." (Disciplinary Counsel Brief on Exceptions, p.4)

This statement contains excerpts from Pa.R.D.E. 218(c)(3)(i), which places the burden of proof on petitioner at that level required to be met by those attorneys who have been the subject of discipline as

a result thereof have been disbarred or suspended. Petitioner has been neither disbarred nor suspended. He withdrew voluntarily from the practice of law while in good standing at the Bar and now wishes, as is his privilege, to request his readmission and the proof offered in connection therewith need not be that suggested by Disciplinary Counsel but rather measured by the more moderate standard described in Pa.R.D.E. 218(c)(3)(ii), which rule provides that formerly admitted attorneys who have been on inactive status shall "have the burden of demonstrating that such a person has the moral qualifications, competency and learning in the law required for admission to practice in the Commonwealth." The board is satisfied that petitioner has carried that burden.

With respect to the level of petitioner's competency and learning in the law, there seems to be little doubt that he is well qualified. Disciplinary Counsel makes no argument that he lacks those qualifications. The hearing committee has expressed the following opinion concerning his intellectual ability.

"The Hearing Committee has no doubt of the intellectual ability of the applicant and his capacity to provide competent legal service to those who may seek his services in the event he is reinstated . . ." (Hearing Committee Report p. 8)

Witnesses called by petitioner dwelled at some length on his qualifications without challenge.

Another qualification appearing in the recommendation for reinstatement by the hearing committee directed that petitioner "make arrangements promptly to discharge such financial obligations as are admittedly owing and promptly litigate those, which he alleges are not due and owing." It

also suggested that an amended petition should be filed. If that recommendation is taken to mean that petitioner should be reinstated first and the conditions imposed be discharged later, then we agree with Disciplinary Counsel that such a qualified recommendation is without precedent and is contrary to the decision by the Supreme Court in the matter of [Anonymous], Disciplinary Board Docket No. 50 D.B. 73. However, the recommendation of the hearing committee does not appear to impose conditions on petitioner following his admission but rather the condition requires action to be taken by petitioner prior to his readmission. Whether this is a proper recommendation needs not be determined here as it appears petitioner has now provided complete responses to all of the questions brought to his attention. Should petitioner be required to complete another application, the board presumably would have no more information than that elicited from petitioner by Disciplinary Counsel on cross-examination at the hearing and which appears of record. The board is satisfied that the answers given to those questions can properly be construed as adequate response to the questionnaire and thereby petitioner has discharged the obligation imposed on him by Pa.R.D.E. 218(c)(3)(ii). If petitioner could be required to complete another questionnaire, it would serve little purpose other than to delay the proceeding.

The other condition requiring petitioner to pay certain financial obligations and to litigate others appears to be beyond the authority of the board to order. It does not appear in the record nor has Disciplinary Counsel suggested that petitioner's financial obligations are in any way related to attorney-client dealings or to professional misconduct in any respect. The fact that petitioner has judgments of record against him does not in the

view of the board demonstrate such lack of moral qualifications as to justify denial of the petition of a formerly admitted attorney, who has been on inactive status.

It certainly should not be assumed that the board encourages or condones incomplete or inaccurate answers to questions appearing on the questionnaire attached to the application for reinstatement. At the same time, it certainly should not be assumed that every mistaken response or oversight in answering the questionnaire will automatically disqualify a formerly admitted attorney, who has been on inactive status from regaining the privilege of practicing law in this Commonwealth.

## RECOMMENDATION

The board recommends that the prayer of petitioner for reinstatement be granted. The board further recommends that the court direct that necessary expenses incurred in the investigation and processing of the petition for reinstatement be paid by petitioner. A statement of such expenses is appended to this report.

Messrs. Johnson and Daniels did not participate in the adjudication.

## ORDER

O'BRIEN, *C.J.*, And now, April 8, 1981, the report and recommendation of the Disciplinary Board of the Supreme Court dated February 18, 1981 is approved; and it is ordered, that petitioner who has petitioned for transfer from inactive to active status, shall be and hereby reinstated to active practice as a Member of the Bar of the Commonwealth; and it is further ordered, that the expenses incurred in the investigation and processing of the petition for reinstatement shall be paid by petitioner.